## Commonwealth v. Achterman et al.

*C. R. Bensinger, Leighton Campbell,* and *William A. Schnader,* for plaintiff.

*Rhodes & Gearhart, R. L. Mervine,* and *L. A. Achterman,* for defendant.

SHULL, P. J., July 24, 1934.—The plaintiff, the Commonwealth of Pennsylvania, filed its bill in equity against the defendants praying the court to decree that the tax sales of June 11, 1928, of the John Nicholas, Jr., warrant to Leo A. Achterman, the Francis J. Smith warrant to P. P. Henning, the Elizabeth Smith warrant to A. M. Price, and the Francis Smith warrant to the Commissioners of the County of Monroe are illegal and void.

To this bill, the Commissioners of the County of Monroe filed their answer disclaiming title to the said Fran-

cis Smith warrant. The defendants Leo A. Achterman, P. P. Henning and A. M. Price each filed his answer claiming title to the land in question by virtue of the above-mentioned tax sales.

There are two questions involved in this issue:

First: If taxes be regularly assessed against privately-owned land, unpaid, and so returned, as by law required, the land advertised for sale by the county treasurer in accordance with the statutory provisions in such case made and provided, and, after such advertisement but prior to the sale, the Commonwealth of Pennsylvania purchased the land from the owner and received its deed for the same, does the purchaser of this land sold at such treasurer's sale acquire any title as against the Commonwealth, if the land is not redeemed within 2 years after such sale?

Second: When lands for a period of 4 years are assessed as seated lands, and the taxes thereon paid by the owner, may an assessor change this assessment from the seated to the unseated assessment list without notice to the owner, if the owner is a nonresident of the Commonwealth.

The first question involves the right of the county treasurer to sell, at tax sale, lands, the title to which is, at the time of sale, vested in the Commonwealth of Pennsylvania. That lands of the Commonwealth are not subject to taxation unless expressly so made by statute is fundamental and requires no citation of authority. It is likewise fundamental that it would be against public policy to sell lands of the Commonwealth for unpaid taxes; and further, it is fundamental that a Commonwealth is not amenable to the suit of an individual or a suit of one of the subdivisions created by that sovereignty without its consent. As a consequence, no court deriving its authority from the sovereign Commonwealth has jurisdiction to seize or sell the property of that sovereign, except by its express consent, nor does any officer created

by that sovereign have power to seize or sell the property of the Commonwealth without its express consent.

In this case, it is not urged that such consent was given, and, as a matter of fact, no such consent was ever given.

We cannot see that the facts that these taxes were assessed, became due, were unpaid, the property returned and duly advertised for sale for delinquent taxes while it was the property of an individual and subject to all of the statutory provisions of this Commonwealth relating to the sale of land of individuals for unpaid taxes, in any way affects this situation. Had the sale been made prior to the acquisition of title by the Commonwealth, it would be quite another question for then we could, without hesitation, hold this land to be the property of the purchaser at the tax sale for, as we view it, the Commonwealth then could have acquired by the deed it received simply an equity of redemption and not absolute title; but this deed was delivered to the Commonwealth prior to the sale; the Commonwealth was in possession prior to and at the time of these sales. From the instant title vested in the Commonwealth, the statutes regulating taxation of land owned by individuals and the sale thereof for unpaid taxes ceased to apply to this land and it was governed by sovereign rights, and this is true even though the process of sale of land as by statute provided for taxes unpaid while held by individual owners was partially completed when the Commonwealth acquired title. When sovereign rights attach, that very instant the process against the thing to which they attach stops, unless it be process to which the sovereign has given consent.

The facts in this case are strongly similar to the facts in the case of Tinicum Twp. v. United States Shipping Board, 17 Del. Co. 230, in which case our learned brother, Judge Dickinson of the United States District Court for the Eastern District of Pennsylvania, said:

"The question then becomes, in this aspect of it, whether a proceedings in rem when the rem is the property of the United States is a proceeding against the United States. With respect to whether the property is the property of the United States, we content ourselves with stating the conclusion reached, which is that the position taken that the United States is not concerned because its claim of ownership of the property was not acquired in conformity with law, is untenable. This we think to be obvious because no court could make a finding that the United States was not the lawful owner of property to which it made claim of title without deciding against the United States, and the admitted doctrine is that no court can render a judgment against the United States unless it had been empowered so to do through the consent of the United States that it may so do. The doctrine of the immunity of the sovereign from the exercise of the judicial power is often given support in various theories of immunity. . . . Whatever the basis for the doctrine may be, it is admittedly a well established doctrine." p. 234.

"Real estate in private ownership, subject to taxation, was duly assessed and a tax duly levied, which thereby became a lien against the property. Thereafter the United States succeeded to the ownership of the property and if the taxing authorities attempt to assert against the property their otherwise right to enforce the payment of the tax, the court in which proceedings are instituted is halted in doing what would otherwise be done by a suggestion of the interest of the United States in the property. This is because of the want of jurisdiction in the court to entertain any action against the United States without its consent, expressed through an Act of Congress or otherwise." p. 233.

The principle so well stated in this case applies with equal force to a Commonwealth and is governing in this case.

*Conclusion of law*

Where unpaid taxes against lands owned by an individual are returned to the county treasurer, and the land advertised for sale for unpaid taxes, and the Commonwealth purchases the land subsequent to the advertisement but prior to the sale by the county treasurer, the purchaser at such sale acquired no title to the land, even though it be not redeemed.

Inasmuch as our conclusion as to the first question makes this sale void, the other questions here involved become academic and no purpose could be served by disposing of them at this time, and they are, therefore, not considered by us.

And now, July 24, 1934, it is ordered, adjudged and decreed that the sale of the tracts of land in the warrantee name of John Nicholas, Jr., to Leo A. Achterman, the Francis J. Smith warrant to P. P. Henning, the Elizabeth Smith warrant to A. M. Price, and the Francis Smith warrant to the Commissioners of Monroe County, on June 11, 1928, are illegal and void.

The prothonotary is directed to make the following entry on the Common Pleas Miscellaneous Docket No. 7, page 269, opposite the entry on the minute of acknowledgment of sale of the said four tracts, to wit: "Sale void See decree entered July 24, 1934 to No. 64 May Term, 1931, in Equity" and further it is directed that a like entry be made on the margin of the Treasurer's Sale Book by the County Treasurer and on the County Commissioners' Land Ledger of Land purchased at tax sale for want of bidders.

It is further ordered and decreed that the defendants produce and deliver for cancellation their respective deeds for these tracts; that the cost of this proceeding up to the filing of the disclaimer by the Commissioners of Monroe County be paid equally by the defendants in this case; and that the costs accruing subsequent thereto

be paid by the defendants, Leo A. Achterman, P. P. Henning, and A. M. Price.

This decree to be entered nisi and unless exceptions thereto be taken as provided by the equity rules, then counsel for plaintiff are directed to prepare a decree in accordance with this decree nisi, including proper description of the real estate involved and to submit the same to the court to be entered as a final decree.

From C. C. Shull, Stroudsburg.